# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| TAMELA K. BOWERS,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>　　　　Defendant. | No. C 06-3089-MWB<br><br>**MEMORANDUM OPINION AND<br>ORDER REGARDING<br>MAGISTRATE JUDGE'S REPORT<br>AND RECOMMENDATION AND<br>PLAINTIFF'S OBJECTION** |

_____

**TABLE OF CONTENTS**

*I.  INTRODUCTION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*II.  LEGAL STANDARDS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
　　*A.  For Reviewing A Magistrate Judge's Report And Recommendation* . . . . 2
　　*B.  For Reviewing The Commissioner's Final Decision* . . . . . . . . . . . . . 7

*III.  LEGAL ANALYSIS* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
　　*A.  Un-Objected-To Findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
　　　　1.  Does substantial evidence support the Commissioner's
　　　　　　finding? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
　　　　2.  Is Bowers disabled? . . . . . . . . . . . . . . . . . . . . . . . . . . 13
　　*B.  Objected-To Findings* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*IV.  CONCLUSION* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## I. INTRODUCTION

Plaintiff Tamela Bowers applied for Title II disability insurance benefits and Title XVI supplemental security income benefits in September of 2003. She claimed she was entitled to benefits as a result of physical and mental health problems. The final decision of the Commissioner denied benefits to Bowers. Bowers sought judicial review in this court and the matter was referred to Chief Magistrate Judge Paul A. Zoss. Judge Zoss respectfully recommended "the Commissioner's decision be reversed and the case remanded pursuant to sentence four of 42 U.S.C. § 405(g), for a finding that Bowers was disabled from September 1, 2002, through June 28, 2004; and for further proceedings and development of the record to determine whether Bowers's disability has continued since June 28, 2004." Dkt. # 14. Bowers agreed "with the majority" of Judge Zoss's recommendation, but specifically objected to Judge Zoss's finding that "the record lacks sufficient evidence to make a determination regarding whether Bowers remained disabled due to her mental impairments after June 2004." Dkt. # 15. Bowers argues the record does establish ongoing mental impairments that prevented her from performing substantial gainful activity. As a result, Bowers argues she should continue to be found disabled after June, 2004.

The relevant factual background, as well as the factual findings Bowers disputes in her objection, will be discussed in the court's legal analysis.

## II. LEGAL STANDARDS

### A. *For Reviewing A Magistrate Judge's Report And Recommendation*

The court reviews the magistrate judge's report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. IA. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's report and recommendation). While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask. Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985). Thus, a district court *may* review de novo any issue in a magistrate judge's report and recommendation at any time. *Id.* If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate." *Thomas*, 474 U.S. at 150.

De novo review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter. *Salve Regina College v. Russell*,

499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting de novo review is "distinct from any form of deferential review"). The de novo review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'" *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))). Thus, while de novo review generally entails review of an entire matter, in the context of § 636 a district court's *required* de novo review is limited to "de novo determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any *issue* need only ask." (emphasis added)). Consequently, the Eighth Circuit Court of Appeals has indicated de novo review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger de novo review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit has been willing to "liberally construe[]" otherwise general pro se objections to require a de novo review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise, *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require de

4

novo review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, this court will strive to provide de novo review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give de novo review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting de novo review with "clearly erroneous standard" of review, and recognizing de novo review was required because objections were filed). The court is unaware of any case that has described the clearly erroneous standard of review in the context of a district court's review of a magistrate judge's report and recommendation to which no objection has been filed. In other contexts, however, the Supreme Court has stated the "foremost" principle under this standard of review "is that '[a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the

clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed," *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than de novo is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads this court to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; *see also* Fed. R. Civ. P. 72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, the court believes one further caveat is necessary: a district court always remains free to render its own decision under de novo review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and the district court may choose to apply a less deferential standard.

### *B. For Reviewing The Commissioner's Final Decision*

Of course, the court must also keep in mind the standards for reviewing the Commissioner's final decision and the applicable standards for making a disability determination. These standards were detailed in Judge Zoss's report and recommendation, so the court will only briefly summarize them here. Dkt. # 14.

A disability determination must be made using the five-step sequential process outlined in the federal regulations. 20 C.F.R. §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) ("The Commissioner uses a five-step evaluation to determine if a claimant is disabled."). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). If the claimant is not engaged in substantial gainful activity, then the Commissioner determines if the claimant has a "severe medically determinable physical or mental impairment" under the second step. *Id.* § 416.920(a)(4)(ii). If not, then the claimant is not disabled. If so, then the Commissioner goes on to the third step to determine if the severe impairment "meets or equals" a listed impairment. *Id.* § 416.920(a)(4)(iii). The claimant is disabled if the impairment is listed, but, if not, the Commissioner must assess the claimant's "residual functional capacity and [his or her] past relevant work" under the fourth step. *Id.* § 416.920(a)(4)(iv). If the claimant can still perform past relevant work, the claimant is not disabled. However, if the claimant cannot perform past relevant work, then at the fifth and final step the Commissioner determines if the claimant "can make an adjustment to other work." *Id.* § 416.920(a)(4)(v). The claimant is not disabled if he or she can adjust to other work.

If appealed, the court reviews the Commissioner's decision to determine whether the correct legal standards were applied and whether the factual findings are supported by substantial evidence on the record as a whole. *Page v. Astrue*, 484 F.3d 1040, 1042 (8th

Cir. 2007). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). Even if the court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).

## III.  LEGAL ANALYSIS
### A.  Un-Objected-To Findings

Judge Zoss made two basic recommendations which were not objected to by Bowers:  1)  that the Commissioner's finding that Bowers was not disabled was not supported by substantial evidence, and 2) that substantial evidence indicated Bowers was disabled and entitled to disability benefits from at least September 1, 2002, until June 28, 2004.  Dkt. # 14.  The court reviews these recommendations for clear error.  *See United States v. Raddatz*, 447 U.S. 667, 675 (1980) (noting a district court "'would have to give fresh consideration to those issues to which specific objection has been made'" (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163)); *Grinder*, 73 F.3d at 795 (noting a clear error review is appropriate when no objections are filed).

### 1.  *Does substantial evidence support the Commissioner's finding?*

The administrative law judge (ALJ) determined Bowers was not disabled because she failed to meet the requirements under the fifth and final step.  That is, despite the presence of severe impairments, the ALJ determined Bowers could perform other work that existed in significant numbers in the national economy.  R. p. 27.  The ALJ based his decision on his assessment of Bowers's residual functional capacity, as reflected in the first

and second hypothetical questions asked to the Vocational Expert (VE), and the VE's answers to those questions.[1] R. p. 27, 440-43. In his second hypothetical question, the ALJ described Bowers's residual functional capacity as follows:

> Okay, second hypothetical again limiting lifting to 20 pounds with 10 pounds frequent. Stand and sit six [to eight][2] hours, but I'm going to limit standing to 30 minutes at a time and sitting to 60 minutes at a time and with slight breaks. Non-exertional stays all occasional. Again, just simple, routine constant tasks. No changes in the work setting. No independent decisions. No interaction with the public and occasional interaction with coworkers. Would our hypothetical individual be able to perform jobs with these restrictions . . . ?

R. p. 442. The VE answered in the affirmative, noting the clerical jobs of office helper and photocopy machine operator would be available. *Id*.

The ALJ thus restricted Bowers's *mental* capacity by limiting her to simple and routine tasks, no changes in the work setting, no independent decisions, and no interaction with the public and only occasional interaction with her coworkers. Such restrictions do find support in Dee Wright, Ph.D., and Dr. John Garfield's mental residual functional capacity assessment, R. p. 178, and in Dr. Ronald Larsen's medication management note on June 28, 2004, in which he found Bowers's Global Assessment of Functionality (GAF)

---

[1] The ALJ did not specifically state which hypothetical question or questions he relied upon in making his ruling. However, because the VE answered favorably towards the ALJ's decision on only the first two hypothetical questions, it is obvious the ALJ relied upon those hypothetical questions for his decision. *Compare* R. p. 27 (ALJ's decision), *with* R. p. 440-43 (VE's testimony).

[2] The ALJ did not state "to eight" in his original question; however, the VE asked for a clarification in which the ALJ agreed that the hypothetical question should have read "six to eight hours." R. p. 442.

score to be 60.[3] Judge Zoss, however, specifically disagreed with the ALJ's assessment of Bowers's mental capacity and recommended that the ALJ's decision be reversed on this basis.[4]

The court cannot say that such an un-objected to recommendation is mistaken. Judge Zoss carefully set forth Bowers's mental health history, which paints a very different picture than the mental health history portrayed by the ALJ. Bowers has an extensive medical history from treating physicians that document GAF scores in the forties and fifties on multiple occasions. In January of 2000, Dr. Jackson determined Bowers's GAF score was 50; in April 2000, 55; in May 2001, 45 and 58; in June 2001, 45; in August 2001, 42; in December 2001, 45; in March 2002, 45; in May 2002, 45; in August 2002, 40; in

---

[3] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'" *Langley v. Barnhart*, 373 F.3d 1116, 1123 n.3 (10th Cir. 2004) (quoting American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision 4th ed. 2000)). GAF scores have been considered relevant evidence in this circuit, *England v. Astrue*, 490 F.3d 1017, 1023 n.8 (8th Cir. 2007) ("[W]e have considered GAF scores to be relevant evidence in other cases."), although the Eighth Circuit Court of Appeals has also suggested their "relevance and significance" is to be determined on a case by case basis, *see id.* ("Whatever relevance and significance GAF scores may have in other cases, we cannot say . . . ."). The Eighth Circuit Court of Appeals has noted "that a GAF score in the fifties may be associated with a moderate impairment in occupational functioning, and a GAF score in the forties may be associated with a serious impairment in occupational functioning." *Cox v. Astrue*, 495 F.3d 614, 620 (8th Cir. 2007) (claimant had a GAF score of 65). The Eighth Circuit Court of Appeals, in discussing a GAF score of 60, stated "a GAF between 51 and 60 is indicative of moderate symptoms or moderate difficulties in social, occupational or school functioning." *Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005).

[4] Judge Zoss found that the ALJ's assessment of Bowers's physical residual functional capacity was supported by substantial evidence in the record. The court agrees, and accepts this un-objected to recommendation.

February 2003, 45; in May 2003, 40; in July 2003, 40; in August 2003, 45; and in November 2003, 45. R. p. 159-77. In April of 2001, Dr. M. E. Lassise diagnosed Bowers with a GAF score of 45, and then later gave Bowers a GAF score of 48 on July 15, 2005. R. p. 175, 373. In July of 2001, a licensed independent social worker, Paula Linnevold, assessed Bowers with a GAF score of 48. R. p. 171. Dr. Larsen finally reported a GAF score of 60 on June 28, 2004,[5] r. p. 212, but then in July of 2005, Dr. Lassise assessed Bowers with a GAF score of 48, r. p. 373, as did licensed clinical psychologist Audrey Frederickson in August of 2005, r. p. 374.

The court believes Bowers's GAF scores are definitely relevant and significant in this case. *See Brueggemann v. Barnhart*, 348 F.3d 689, 695 (8th Cir. 2003) (noting the import of the claimant's GAF score); *cf. England*, 490 F.3d at 1023, 1023 n.8 (recognizing GAF scores were not particularly helpful in that case). It does not matter that most of these scores were assessed prior to Bowers's alleged onset date of disability, September 1, 2002. The scores are all still valuable as "longitudinal evidence." 20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00(D)(2) ("Proper evaluation of your impairment(s) must take into account any variations in the level of your functioning in arriving at a determination of severity over time. Thus, it is vital to obtain evidence from relevant sources over a sufficiently long period prior to the date of adjudication to establish your impairment severity."); *see Walker v. Apfel*, 141 F.3d 852, 854 (8th Cir. 1998) (recognizing the ALJ properly looked at longitudinal evidence); *Fowler v. Bowen*, 866 F.2d 249, 252 (8th Cir. 1989) (noting the ALJ erred in the evaluation of claimant's mental state partly because the ALJ improperly discounted the psychiatrist's reliance on a

---

[5] In the same report, Dr. Larsen acknowledged Bowers was "tense and dramatic," that "her mood was anxious," and that she had "[m]ajor depression, recurrent, severe," and a "personality disorder, not otherwise specified, group B." R. p. 212.

longitudinal approach); *see also Hallam v. Barnhart*, 211 Fed. Appx. 519, 520 (8th Cir. 2006) (recognizing the ALJ properly evaluated longitudinal evidence). Moreover, Bowers's lowest GAF scores were assessed after or in the month before her alleged onset date of disability. The failure of the ALJ to even acknowledge Bowers's many and much lower GAF scores in his summary of Bowers's mental health history highlight his corresponding failure to properly state Bowers's mental residual functional capacity in his relied upon hypothetical questions. *See Wilson v. Astrue*, 493 F.3d 965, 967 (8th Cir. 2007) ("[T]he GAF and full scale IQ scores are certainly pieces of the hypothetical puzzle necessary to gain an accurate overall assessment of [the claimant's] functioning.").

The court realizes it is not to "reweigh the evidence presented to the ALJ," *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003), but in determining whether substantial evidence on the record as a whole supports the Commissioner's decision, the court must take into account "evidence that detracts from the Commissioner's decision as well as evidence that supports it," *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). The mental health history in the record and outlined in Judge Zoss's report and recommendation detracts from the Commissioner's decision. Moreover, in light of the "longitudinal evidence" of Bowers's mental health, the court believes the ALJ improperly accounted for Bowers's mental limitations in the first and second hypothetical questions. Thus, the VE's testimony in response to those questions cannot constitute substantial evidence in support of the Commissioner's decision. *See Cox*, 495 F.3d at 620 ("Testimony from a vocational expert is substantial evidence only when the testimony is based on a correctly phrased hypothetical question that captures the concrete consequences of a claimant's deficiencies."). The court therefore accepts Judge Zoss's un-objected to recommendation that the Commissioner's decision be reversed because substantial evidence does not support the Commissioner's decision that Bowers was not disabled.

### 2. *Is Bowers disabled?*

The court can only reverse the Commissioner's decision and remand for benefits if "overwhelming" evidence supports the finding of a disability.

> Ordinarily, when a claimant appeals from the Commissioner's denial of benefits and we find that such a denial was improper, we, out of "our abundant deference to the ALJ," remand the case for further administrative proceedings. Consistent with this rule, we may enter an immediate finding of disability only if the record "overwhelmingly supports" such a finding.

*Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (quoting *Cox v. Apfel*, 160 F.3d 1203, 1210 (8th Cir. 1998), and in turn quoting *Thompson v. Sullivan*, 957 F.2d 611, 614 (8th Cir. 1992)); *see Ingram v. Barnhart*, 303 F.3d 890, 895 (8th Cir. 2002) (noting the *Buckner* court stated that a "court may reverse the Commissioner's decision outright if overwhelming evidence supports a finding of disability"). These principles are equally true when a district court reviews the Commissioner's decision in the first instance. *See Wigg v. Chater*, 904 F. Supp. 949, 957-58 (N.D. Iowa 1995) ("Accordingly, the court has the power to affirm, reverse or remand the ALJ's decision, and 'where the record overwhelmingly supports a disability finding and remand would merely delay the receipt of benefits to which plaintiff is entitled, reversal [for an immediate award of benefits] is appropriate.'" (quoting *Thompson*, 957 F.2d at 614)).

Instead of finding that "overwhelming" evidence supported a conclusion of disability, Judge Zoss reported that "substantial" evidence supported a finding that Bowers was disabled due to her mental impairments from her alleged onset date until at least June 28, 2004. Dkt. # 14. The court is only to determine whether substantial evidence on the record as a whole supports the Commissioner's factual findings, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial

evidence, shall be conclusive . . . ."), not whether substantial evidence supports an award of benefits if such benefits have been denied. Only "[w]hen the record is overwhelmingly in support of a finding of disability" can the court remand for an award of benefits without further consideration. *Fowler*, 866 F.2d at 253. Thus, Judge Zoss committed clear error by not using the appropriate standard. As a result, the court will not accept Judge Zoss's ultimate recommendation of awarding benefits without a more critical review of the record.

The court's own review of the record convinces the court that Bowers is entitled to benefits from September 1, 2002, until June 28, 2004. The ALJ did not appropriately take into account Bowers's mental health in his first and second hypothetical questions. The first two hypothetical questions failed to address Bowers's documented depression and anxiety in any meaningful manner. The ALJ's third hypothetical question to the VE "was the same as number two plus missing three or more days a month and unable to sustain an eight-hour workday, and that would be due to anxiety." R. p. 443. The VE answered, "Either of those factors would preclude competitive employment." R. p. 443. This third hypothetical question more accurately accounted for Bowers's mental health problems, as the record contains numerous entries of problems due to anxiety. R. p. 169, 207, 208, 210, 212, 213, 216, 254, 279. Moreover, the court is confident the third hypothetical question more accurately accounts for Bowers's extensive documentation of low GAF scores, particularly around her alleged onset date. *See Wilson*, 493 F.3d at 967-68 (awarding benefits on appeal and noting the claimant had received a GAF score of 43 at one time); *Brueggemann*, 348 F.3d at 695 (noting the record showed "the VE considered a claimant with a GAF of 50 unable to find any work"). *But see Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 877 (6th Cir. 2007) ("Even assuming GAF scores are determinative, the record supports a GAF in the high 40s to mid 50s, which would not preclude her from having the mental capacity to hold at least some jobs in the national economy."). The

14

VE's response to this third hypothetical question establishes overwhelming support in the record that Bowers's was disabled and entitled to benefits for the un-objected period recommended by Judge Zoss--September 1, 2002, until June 28, 2004.

### B. *Objected-To Findings*

Bowers specifically objects to Judge Zoss's finding that she is not entitled to a continual period of disability. Bowers argues there is enough evidence to show that she is entitled to a finding of disability after June 28, 2004. Specifically, Bowers argues Judge Zoss failed to recognize that she was seen by several medical personnel at this time with corresponding medical records to show she suffered from mental health problems.

Bowers points to record evidence that she was seen by Lisa Hendrick, a physician's assistant, on May 13, 2004 and again on August 25, 2004. In May, Hendrick reported that Bowers "has a diagnosis of bipolar and her medications are not helping," and that "[s]he is very frustrated and depressed." R. p. 224. In August, Hendrick reported that Bowers "does have significant anxiety and depression issues followed by Ronald M. Larsen, MD." R. p. 210. Bowers also alerts the court to record evidence that she visited the emergency room on May 17, 2004, for a very rapid pulse. Dr. Larsen subsequently saw her and noted that she was still taking her bipolar medication, Abilify. R. p. 222. On June 28, 2004, Dr. Larsen saw Bowers again and he altered her medications to reflect her ongoing mental health problems, noting she had "[m]ajor depression, recurrent, severe." R. p. 212. Dr. Larsen reported that Bowers had the same mental status "as in June" when he saw her again in November of 2004, but did not indicate a GAF score. R. p. 207. Then in March of 2005 there are medical notations that Bowers believed she was forgetting things due to taking her Depakote medication. R. p. 345. Finally, on June 15, 2005, Sharon Enabnit, a registered nurse, noted that Bowers "was seen by Ronald Larsen, MD[,]

15

one week ago, and he started her on CYMBALTA, and she feels that her depression is getting worse." R. p. 342.

This record evidence is inconsistent with Judge Zoss's finding that no medical records described Bowers's mental health condition between June 28, 2004 and July 15, 2005. This information is further evidence of the ALJ's failure to properly account for Bowers's mental health limitations and is supportive of the court's conclusion that substantial evidence does not support the Commissioner's finding that Bowers is not disabled. The court does not believe, however, that this information amounts to "overwhelming" support in the record that Bowers is disabled and entitled to a *continual* award of benefits. While the VE's testimony provided such overwhelming support for the closed period, the court is not convinced Bowers's mental health problems are documented well enough after June 28, 2004, to find "overwhelming" support that would allow the court to immediately award benefits on a continuing basis. In fact, by June 28, 2004, Bowers's GAF score was assessed at 60. R. p. 212; *see Goff*, 421 F.3d at 793 (discussing a GAF score of 60, and noting "a GAF between 51 and 60 is indicative of moderate symptoms or moderate difficulties in social, occupational or school functioning."). Therefore, consistent with Judge Zoss's recommendation on this point, the court does not find that Bowers is disabled and entitled to benefits after June 28, 2004. Instead, the court holds that a finding of disability and an immediate award of benefits after June 28, 2004, is not appropriate. *Cf. Ingram*, 303 F.3d at 895 (noting an immediate award of benefits was appropriate because there was overwhelming evidence to support the finding of disability and "[a] remand would only delay matters longer").

The court regrets delaying this matter further, but the Commissioner must be given an opportunity in this case to determine if Bowers's mental health problems are sufficient to entitle her to disability benefits for a continual period, or only for the closed period

indicated.  *See Harris v. Sec'y of the DHS*, 959 F.2d 723, 724 (8th Cir. 1992) ("The [Commissioner] can award Social Security disability benefits either on a continuing basis or for a 'closed period.'").  Thus, on remand, the Commissioner must determine whether Bowers is entitled to benefits after June 28, 2004.

## IV.  CONCLUSION

The court **accepts** Judge Zoss's ultimate findings in his report and recommendation, but notes it does not accept the legal standard that led to some of these findings. Substantial evidence on the record as a whole does not support the Commissioner's decision, as the ALJ failed to properly account for Bowers's mental health limitations in the hypothetical questions the ALJ relied upon in making his determination.  Furthermore, there is overwhelming support in the record to justify a finding of disability and an immediate award of benefits for the closed period from September 1, 2002, until June 28, 2004.  There is not, however, overwhelming support in the record to justify a continual period of benefits after June 28, 2004.  The record indicates mental health problems existed after June 28, 2004, but the record does not indicate such problems were as great as those documented prior to that time, or great enough to award benefits on appeal. Therefore, the Commissioner's **decision is reversed and the case is remanded pursuant to sentence four** of 42 U.S.C. § 405(g), for a finding that Bowers was disabled from September 1, 2002, through June 28, 2004; and for further proceedings and development of the record to determine whether Bowers's disability has continued since June 28, 2004, and if so, whether she is entitled to a continual or closed period of disability after that date.

**IT IS SO ORDERED.**

**DATED** this 24th day of January, 2008.

                                                                          MARK W. BENNETT
U. S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA